ROXY H. MORBEY, ADMINISTRATRIX, v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

**Evidence: RAILWAYS:** *custom.* Evidence that clinker pullers in the employment of defendant railway company did at times move engines to the knowledge of the foreman in charge of the work, and that he did not forbid them, may tend to prove that they acted by authority in so moving them, although the practice did not amount to a general custom.

AUTHORITY OF EMPLOYE. Evidence that a railway employe, through whose negligence plaintiff's intestate was killed while in defendant's employ, was employed to remove ashes and fire from its engines, does not tend to prove that he was employed to move engines or that he had any implied or apparent authority to move them.

PROVINCE OF JURY. The jury is not authorized to presume, in the absence of evidence to that effect, that plaintiff's intestate, for whose death while in defendant's employ suit is brought, was violating his instructions by sitting on the railroad track while cleaning out the ash pan of an engine.

**Instructions.** Action for negligence causing the death of a railroad employe—the negligence charged was that said employe was under an engine engaged in cleaning out its ash pan, that an employe whose duties did not require him to operate engines ran one against the first engine thus causing the death of the employe at work under it. The court instructed that contributory negligence of the decedent should not defeat a recovery if the jury found that the foreman who had charge of the work of the employe who operated the second engine, without authority, knew when he got on the engine that the engine was in the hands of that employe, that it must collide with the first engine unless stopped and knew that decedent was working under said first engine, and if the foreman could, by reasonable care and diligence, have prevented the collision. The evidence showed that if the wheels of the first engine had been blocked, as they should have been, decedent would not have been injured. *Held,* The instruction was erroneous in assuming that decedent must necessarily have been injured by an unexpected movement of the engine under which he was at work, and that the foreman knew the fact first assumed.

SAME. Error in requiring defendant in an action for personal injuries to prove lack of knowledge of a given fact, the burden of proof

of which rests upon plaintiff, is not cured by the fact that another instruction throws the burden of proving such fact upon plaintiff.

RULE APPLIED. Plaintiff in an action for the death of a railroad employe, alleged to have been caused by the negligence, while operating an engine, of another employe whose duties did not require him to operate engines, has the burden of showing that the defendant had knowledge that such employe did operate engines, where the ground of negligence set up is that the foreman in charge knew of the habits of such employe of running engines and did not prevent him from doing so.

Negligence: CONTRIBUTORY NEGLIGENCE: *jury question.* In an action for the death of an employe of defendant, where there is evidence that the accident occurred by the unauthorized act of another employe, that it might have been prevented by a third employe, and where the evidence did not show that decedent was necessarily negligent, a refusal to direct a verdict for defendant was proper.

*Appeal from Clinton District Court.*—HON. P. B. WOLFE, Judge.

THURSDAY, April 7, 1898.

ACTION at law to recover for damages alleged to have resulted from negligence on the part of the defendant which caused the death of the plaintiff's intestate, Clem L. Morbey. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Hubbard, Dawley & Wheeler* for appellant.

*Chas. A. Clark & Son* and *C. H. George* for appellee.

ROBINSON, J.—The facts involved in the death of Morbey are substantially as follows: On the twenty-eighth day of December, 1894, he was in the employment of the defendant as clinker puller or pitman, at Clinton, in this state. The defendant has at that place a roundhouse of sufficient capacity to hold a considerable number of locomotive engines. The roundhouse

is connected with the main line and other tracks by means of what is known as the house or pit track. In that track, opposite the central part of the roundhouse, is a turntable, which is used in transferring engines to and from the roundhouse. East of that and under the track, are two pits, which are used for removing ashes and clinkers from engines. Each pit is about fourteen feet in length, and four feet in width, and two feet in depth from the level of the tops of the rails. Of these pits the one furthest west is south of the southeast corner of the roundhouse, and the other is a short distance further east. Thirteen feet east of the roundhouse is a water tank, and about seventy feet east of the roundhouse is a sandhouse. When an engine is to be cleaned and placed in the roundhouse, it is run onto the pit track east of the sandhouse. It is there taken by an employe known as an "hostler," or by the hostler's helper, and in due time is placed over one of the pits. An employe known as a "knocker" climbs into the cab, and another employe, called a "clinker puller" or "pit-man," goes into the pit under the engine, and removes from the ash pan the ashes which shake into it while the engine is moving. He then gives a signal. The knocker turns on the blower, drops the drop grate, and with an iron bar knocks the fire, cinders, and clinkers out of the fire box. They drop into the ash pan, are there drenched with water, and are then drawn into the pit by the clinker puller. In cleaning the ash pan, he stands in front of it, and uses an iron hoe with a handle from seven to nine feet in length. If the engine be small, he is unable to stand erect, but is obliged to stoop somewhat if he works while standing. After the engine is cleaned, it is moved onto the turntable, and thence into the roundhouse. On the night of the accident, engine numbered 383 was moved onto the pit we have described, which is furthest west. A knocker was in the cab, and the

decedent was in the pit, for the purpose of cleaning the ash pan. At that time engine 355 was standing on the pit track, a short distance east of the sandhouse, headed westward, but no one was on it. A clinker puller, named McGovern, after performing some service on engine 383, left it, and went to engine 355, took possession of it, and commenced to practice with it. He first ran it westward towards engine 383, then eastward, and then westward again, and when the engine was opposite the sandhouse, a hostler's helper, named Rahm, with a lantern in his hand, stepped from the ground into the cab. There is a conflict in the evidence as to what then occurred, but a few moments later the engine struck No. 383, and moved it forward from ten to sixteen feet. Morbey was caught under one of the drive wheels, and it passed over him, causing his death within a few minutes. It is alleged that the accident was caused by negligence on the part of the defendant, in that its employes, charged with the duty of caring for and operating engine 355, failed to use due care in the control and management of it; that McGovern was without sufficient knowledge or skill to be intrusted with an engine; and that Rahm failed to use due care after he went into the cab of engine 355 to stop it in time to avoid the collision. The defendant denies all negligence on its part, but admits that McGovern was not competent to manage an engine. It says, however, that he was not authorized, but, on the contrary, was forbidden, to move engines; that it was not a part of his duties, nor within the scope of his employment, to move them; and that, in doing so, he acted as a mere volunteer, and violated the rules of the defendant. It is claimed, further, that Morbey had assumed the risks of his employment; that he contributed to the accident by negligence on his part; and that the accident was not in any manner

connected with the use and operation of a railway, within the meaning of the statutes of this state.

I. When the evidence had been fully submitted, the defendant asked the court to direct a verdict in its favor, for the alleged reason that there was not sufficient evidence to authorize a verdict for the plaintiff. There was much evidence which tended to show that clinker pullers were not authorized to move engines; that McGovern had been forbidden to do so; and that none of the agents of the defendant charged with the duty of enforcing the rules had any knowledge that he had at any time moved engines, or that the rules forbidding clinker pullers to move them were disobeyed. There was also evidence which tended to show that Rahm did not know who the person who had charge of engine 355 was, in time to prevent the collision, but supposed that he was a competent person. There was evidence, however, which tended to show that clinker pullers, who were not specially authorized to do so, very frequently, if not habitually, moved engines, and that the employes of the defendant who had authority over the clinker pullers and engines, and who were authorized to enforce the rules of the defendant, had knowledge of the practice, and did not forbid it. The night of the accident was dark, and the light in the cab of engine 355 was dim. McGovern and Rahm do not agree respecting what occurred in the cab immediately preceding the accident; but both men knew that some one was in the pit under engine 383, and Rahm knew that McGovern was not competent to operate an engine. Some of the evidence tended to show that Rahm, after he entered the cab, recognized McGovern in time to have taken the engine and prevented the accident. The evidence did not necessarily show that Morbey contributed to the accident on his part. It was shown that on a former

occasion he had been seen to sit on the rail in front of a drive wheel while pulling clinkers; that it was dangerous to do so; and that he had been ordered by the employe in charge of the work to discontinue the practice. It also appears that the drive wheel passed over his body from its left side, but no one saw him on the rail before the accident. The evidence does not show whether he was sitting on the rail, or was leaving the pit, or doing some other permissible act when the accident occurred. The jury was not authorized, in the absence of evidence to that effect, to presume that he was violating his instructions. We are of the opinion, therefore, that the district court properly refused to direct a verdict for the defendant.

II.   The district court charged the jury as follows: "(5) To entitle the plaintiff to a verdict, she must prove to your satisfaction by a preponderance of the evidence,—that is, by the greater or superior evidence: *First*, that the said Clem L. Morbey was killed by reason of one engine of the defendant running into another engine; *second*, that, at the time of the accident, the defendant was negligent, and that Morbey's death was caused by said negligence; *third*, that said Morbey was not guilty of any negligence that directly contributed to his death. If you find all of said facts established in plaintiff's favor, your verdict should be for her; but, if she fails to establish any one of said facts, your verdict should be for the defendant. (6) All the facts of negligence charged against the defendant are withdrawn from your consideration, except the two following propositions: What right, if any, had McGovern to move or handle engines? Could Rahm, after he knew that McGovern was running the engine, have prevented the accident by the exercise of reasonable care and diligence on his part?  *  *  *  (9)  *  *  *   If you find from the evidence that the defendant's foreman, or whoever was in charge of the work

McGovern was engaged in the performance of, knew he was in the habit of or did run engines, and that said foreman, or those who had charge of said work, did not prevent or forbid his doing so after they knew he was so doing,—if you find they did know it, then, and on your so finding, and on your finding that the plaintiff's intestate was not guilty of any negligence that contributed to his death; you would be warranted in finding for the plaintiff. (10) While it is admitted that McGovern was in the employment of the defendant as a clinker man, and that he committed the act which caused the death of Morbey, yet if you find from the evidence that at the time in question he had no authority to handle or move engines, and that the defendant's foreman, or whoever was in charge of the work McGovern was engaged in, did not know he was handling or moving engines, on your so finding, he would not be acting within the scope of his authority or employment, or in furtherance of the defendant's business, but was carrying into effect some purpose of his own, not connected with his employment, and the defendant would not be liable for such acts."

The defendant complains of the tenth paragraph, on the ground that it authorized a recovery by the plaintiff unless the jury should find affirmatively that McGovern had no authority to handle engines; thus placing the burden of showing such want of authority upon the defendant. The plaintiff contends that the portions of the charges we have set out, when considered together, instructed the jury clearly that the burden specified was upon the plaintiff. If, however, such an interpretation was authorized, we do not think it is at all clear that it was the one which the jury adopted. It is true that the charge instructed the jury that the burden was on the plaintiff to prove negligence on the part of the defendant, and the sixth para-

graph narrowed the inquiry to two questions, the first of which, and the one involved in the objection under consideration, was, "What right, if any, had McGovern to move or handle engines?" From the ninth paragraph of the charge the jury would naturally have concluded that the burden of proving that the defendant's foreman, or other agent in charge of the work in which McGovern was engaged, knew that he ran engines, was upon the plaintiff; yet the jury might well have concluded that the tenth paragraph required the defendant to show that McGovern did not have authority to handle engines, and that it did not know that he was handling them. We do not think the jury should have been left in doubt as to the party on whom the burden of proof rested. It was shown that the duties of McGovern did not require him to operate engines, and in view of that fact the burden was on the plaintiff to show that the defendant had knowledge that he did operate them. The tenth paragraph of the charge is, in legal effect, similar to instructions condemned in the cases of *Gwynn v. Duffield*, 66 Iowa, 708, and *Nelson v. Railroad, Co*, 38 Iowa, 564, and is erroneous. The evidence submitted justifies the conclusion that the error was likely to be prejudicial.

III. The court, in the eleventh paragraph of the charge, instructed the jury that negligence of the decedent which contributed to his injury would not defeat a recovery by the plaintiff if it were found "that Rahm when he came upon the engine, knew that it was in the hands of McGovern, and knew that, unless it was stopped, it would collide with the engine then standing on the pit, and that he knew that some one was working under the engine on the pit," and could, by the use of reasonable care or diligence, have prevented the collision, or have given warning which would have enabled the decedent to

escape the danger. It is said this portion of the charge is erroneous, because the evidence showed that it was the duty of Morbey to block the wheels of the engine he was under with blocks provided for that purpose, and that he failed to do so; that he would not have been injured had he blocked the wheels, or had he not been sitting on the rail; and that Rahm is not shown to have known that the wheels were not blocked, nor that Morbey was sitting on the rail; hence that Rahm did not know of Morbey's peril. We are of the opinion that the charge was erroneous in assuming that the decedent would necessarily have been injured by an unexpected movement of the engine he was under, and in assuming that Rahm knew that such was the case. There was evidence which tended to show that engine 355 was moving slowly when Rahm went upon it; that, if the wheels had been blocked, Morbey would not have been injured; and that, if he had remained in the pit, he need not have been injured, for the reason that the lowest part of the engine inside the rail was three feet or more higher than the bottom of the pit, and would not have touched him had he crouched on the pit bottom, as was sometimes done by clinker pullers when engines were moved onto and off of the pits. We do not think that paragraph eleven of the charge fairly presented the law and the duty of Rahm under facts which the jury may have found to exist at the time of the accident.

IV. The court refused to give an instruction asked by the defendant, in words as follows: "The fact that McGovern was employed by the defendant to remove ashes and fire from its engines does not tend to prove that he was employed to move engines, or that he had any implied or apparent authority to move them." We think that this or something of a similar character should have been given.

V. The fourth instruction asked by the defendant, and refused, is as follows: "(4) The fact, if it be a fact, that McGovern or other clinker pullers had at times moved engines would not tend to prove that McGovern had authority to do so, unless the plaintiff further shows by a fair preponderance of the evidence that it was the general custom for clinker pullers to move engines, and that such general custom was known to the foreman, and not forbidden by him."

8     Although this instruction, with some modification, may well have been given, yet the court did not err in refusing to give it in the form asked. The fact that clinker pullers did at times move engines, if known to the foreman in charge of the work, and not forbidden, might tend to prove that they acted by authority, even though the practice did not amount to a general custom. This objection is also applicable to the sixth instruction asked by the defendant.

VI. The conclusions we reach dispose of the controlling questions in the case. Others discussed depend upon the evidence, and may not arise on another trial. For the errors pointed out, the judgment of the district court is REVERSED.