116 84 / 117 281
116 84 / 119 202
116 84 / 122 67
116 84 / f124 146
116 84 / f129 514 / 130 271 / 130 552
116 84 / 131 71 / 116 84 / 135 413
116 84 / 136 72

ROXEY H. MORBEY, Administratrix of the Estate of CLEM L. MORBEY, Deceased, v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

Contributory Negligence:    KNOWLEDGE OF SAME:    *Instructions.* Plaintiff's intestate was killed while working under an engine as a clinker puller, by another engine being run against the one under which he was working, pushing it over him. He was known to be under the engine by another employee who was on the moving engine. The court charged that though the defendant may have been negligent at the time of the injury, yet if the deceased, by his own negligence, directly contributed to bring on himself the injury which resulted in his death, plaintiff could not recover unless the jury found that defendant knew he was negligent and in danger long enough before the accident so that it could, by the exercise of reasonable and ordinary care, have prevented the accident as "hereinafter explained." *Held*, that such instruction was proper, when considered with the further instructions referred to, which showed that no greater knowledge was intended than knowledge of deceased's peril.

*Jury question.* Where plaintiff's intestate was killed, while working under an engine, by another engine being run against it, the question whether another employe, who was on such other engine, could have warned deceased in time to have avoided the injury was for the jury.

ASSUMING PERIL. Where plaintiff's intestate was killed, while working under an engine, by another engine being run against it by an incompetent man, who was practicing, though deceased knew of a custom to practice with engines, he would not be assumed to know that incompetent men would be permitted to to so, or to have assumed the risk of a peril which he did not appreciate.

INSTINCT OF SELF-PRESERVATION. Where plaintiff's intestate was killed, while working under an engine, by another engine being run against it and pushing it over him, and there was no direct evidence as to what he was doing at the time of the accident or how he came to receive the injuries, an instruction that the jury should consider "the instincts which naturally lead men to avoid injury and preserve their own lives, and the presumption that they will ordinarily do so," was not error.

Special Interrogatories:  *Must deal with ultimate facts.* Code, section 3726, provides that: "A special verdict is one in which the jury find facts only. It must present the ultimate facts as established by the evidence, so that nothing remains to the court but to draw from them its conclusions of law." Section 3727 provides that in any case where a verdict is rendered the jury may be required to find specially on any particular question of fact. Section 3728 provides that when the special finding is inconsistent with the general verdict, the former controls. *Held,* that though the special findings need not cover all the ultimate facts, they should be only of ultimate facts essential to the decision of the case.

*Must cover all of ultimate fact.* Plaintiff's intestate M., was killed while working as a clinker puller under an engine by its being run into another engine operated by G., another clinker puller. Defendant requested that the following question be submitted to the jury: "At and prior to the time of M.'s death was it the habit and custom of clinker pullers by themselves to move engines on the house track?" *Held,* that it was properly refused, because limited to the house track, while there was evidence of this habit of moving engines elsewhere.

*Must deal with matter in issue.* The question, "If you find for the plaintiff, state upon what negligence you base such finding,

and what employe or employes committed it" was properly refused, because it could have been answered without touching any issue in the case.

*Must not properly be answerable in several ways.* The question, "Was R. (an engineer's helper, who was on board the moving engine) guilty of any negligence which contributed to the death of M., and, if so, in what respect?" was properly refused, because the jury might experience much difficulty in putting in form the proper answer, the evidence being such that several different answers might have been given, and for other reasons.

*Same.* The question, "Did R. do the best he could under the circumstances, to prevent the collision, after he knew it was G. who was running the engine; called for the best R. was capable of, while all that would be required was that which a man of ordinary prudence would have exercised; and hence was properly refused.

*Appeal from Clinton District Court.*—HON. JAMES W. BOLLINGER, Judge.

THURSDAY, FEBRUARY 13, 1902.

Judgment for damages, from which defendant appeals. —*Affirmed.*

*Hubbard, Dawley & Wheeler* for appellant.

*Calvin H. George, Chas. A. Clark & Son,* and *W. G. Clark* for appellee.

LADD, C. J.—The facts are fully stated in the opinion delivered by Robinson J., on the former appeal. *Morbey v. Railway Co.,* 105 Iowa, 46. Several of the points now discussed were there disposed of. Substantially the same evidence was before the court at that time, and the issues with respect to McGovern's authority to operate the engine as he did, Rahm's neglect in not stopping it in time to avoid the injury, and Morbey's contributory negligence were held to have been rightly submitted to the jury. Upon re-examination of the record, we are not inclined to change the conclusion then reached.

II.   The defendant excepted to the portion of the tenth paragraph of the charge set out: "It follows from this that, although the defendant may have been negligent at the time of the injury, yet if the plaintiff's intestate, by his own negligence, directly contributed to bring upon himself the injuries that resulted in his death, his administratrix, the plaintiff in this ·case, cannot recover, unless you find that the defendant knew he was negligent and in danger long enough before the accident so that it (the defendant) could by the exercise of reasonable and ordinary care, have prevented the accident, as hereinafter explained." It is said there was no evidence that Rahm knew Morbey was negligent.. But it is undisputed that Rahm had left engine No. 383, under which Morbey was working as clinker puller, shortly before he got on the other engine, handled by McGovern. There is no evidence as to whether he observed the situation of Morbey, or that the wheels were not blocked as required; and it may be that Rahm's knowledge of any negligence on Morbey's part, if any there was, cannot be inferred. But subsequent instructions are referred tc for explanation, and when these are examined it clearly appears that no more was intended than knowledge of Morbey's peril. If Rahm knew Morbey was under 383, in a shallow pit for the purpose of cleaning out the fire pan, and in that situation was exposed to great danger, and, notwithstanding this, negligently permitted 355 to run him down, the fact of deceased's previous negligence would furnish no excuse. In other words, it was not essential that Rahm comprehend the character of Morbey's acts. It is sufficient that he appreciated his great peril, or should have done so. If he did, and, by the exercise of ordinary care, could have avoided the accident notwithstanding the previous negligence of the deceased, liability follows. This rule seems to be in accord with the rule as stated by the text writers. See 1 Bailey, Personal Injuries section 1177 et seq.;

Shearman & Redfield Neg. section 2, 25, 35, 36 ; *Beems v. Railway Co.*, 67 Iowa, 442 ; *Wooster v. Railway Co.*, 74 Iowa, 596. It will not do to shield a party from liability for negligence to one in a known position of peril, regardless of his conduct, and permit a recovery only when the injured is known to have been negligent in that position. Appellant also insists that the court erred in instructing the jury to consider "the instincts which naturally lead men to avoid injury and preserve their own lives, and the presumption that they will ordinarily do so." As there was no direct evidence of what Morbey was doing at the time of the accident, or how he came to receive his injuries, the giving of this instruction is in accordance with the rule laid down in *Bell v. Incorporated Town of Clarion*, 113 Iowa, 126.

III. Appellant also urges that the evidence conclusively shows that Morbey knew that other clinker pullers were in the habit of operating engines as did McGovern, and hence that he assumed the risk involved, and that the instruction requested to this effect should have been given. In another portion of their brief counsel concluded, after an exhaustive review of the evidence, that they "do not believe a scintilla of evidence can be found in the record to show that any one aside from McGovern ever knew or heard of any employee running these engines around for practice." It would seem that this furnishes a sufficient answer. But, even if he had such knowledge, in the absence of information to the contrary he cannot be assumed to have known that those wholly incompetent to manage an engine would be permitted to do so, and the court rightly instructed that he must be found also to have appreciated the peril before being held to have assumed the risk. Whether Rahm could have warned Morbey in time to enable him to escape, we think a question for the jury. While the latter may have had the right to assume the engine under which he was at work would not be disturbed, yet several sharp whistles from another engine near by on the same track, if given shortly after Rahm got on, might have

attracted his intention.    Of course, much depends upon when Rahm became aware of the situation, and was called upon to act, and the probability of Morbey hearing and giving heed. These were appropriate matters for the jury's consideration and determination.

IV.    There is, as contended by appellant, a manifest difference between a special verdict and the finding of the facts in answer to interrogatories propounded to the jury. A special verdict is in lieu of a general verdict, and its design is to exhibit all the ultimate facts, and leave the legal conclusions entirely to the court.    Code, section 3726; *Helphrey v. Railroad Co.,* 29 Iowa, 480.    Findings of fact in answer to interrogatories do not dispense with the general verdict.    *Shadbolt & Boyd Iron Co. v. Camp,* 80 Iowa, 539. A special verdict covers all the issues in the case, while an answer to a special interrogation may respond to but a single inquiry pertaining merely to one issue, though essential to the general verdict.    *Chicago & Northwestern Ry. Co. v. Dunleavy,* 129 Ill. 132, (22 N. E. Rep. 15); *First Nat. Bank v. Peck,* 8 Kan. 660; *Manning v. Gasharie,* 27 Ind. 409; 20 Enc. Pl. & Prac. 300.    The one method of ascertaining the facts often serves precisely the same purpose as the other. The advantage of special interrogatories is that the parties are not deprived of the benefit of the general verdict, and all the ultimate facts need not be called for.    The design of special interrogatories is to point out the controlling questions in the case, exact for them separate consideration, and thereby guard against misapprehension of what are the vital issues to be determined.    When the answers cover all the ultimate facts, these furnish a full explanation of the general verdict, and a safe test of its accuracy.    Their use, however, should never be perverted to the purpose of confusing and misleading jurors, nor to that of merely satisfying the curiosity of parties. Yet this might, and no doubt would, often be the result, if, upon the request of either party, the jury must be required to find "specially upon any particular question of fact, regardless of whether

it inhered in or affected the general verdict." A finding on
any question if it relate to "material matters bearing on the
isues," contended to be sufficient by appellant, if not involv-
ing the final result, could be of no real advantage to either
party. "However natural the curiosity parties may have to
know the course of reasoning by which jurors may arrive at
verdicts either for or against them, they have no right, un-
der the guise of submitting questions of fact to be found
especially by the jury, to require them to give their views
upon each item of evidence, and thus practically subject
them to a cross-examination as to the entire case." Such a
practice, while serving no useful purpose, would seriously
embarrass the administration of justice. Section 3727 of
the Code, relating to special interrogatories, has uniformly
been construed as *pari materia* with section 3726, concern-
ing special verdicts, and the particular questions of facts to
be called for in answer to interrogatories held to be the ulti-
mate facts presented in a special verdict. *German Sav. Bank
v. Citizens' Nat. Bank,* 101 Iowa, 530; *Nodle v. Hawthorn,*
107 Iowa, 383; *Thompson v. Brown,* 106 Iowa, 367. Un-
der section 3728, special findings, if inconsistent with, control
the general verdict. This necessarily implies that the ques-
tion submitted shall be controlling. This subject is so lu-
minously treated by Bailey, J., in *Chicago & Northwestern
Co. v. Dunleavy, supra,* that we quote with approval from
that opinion: "May such questions relate to mere eviden-
tiary facts, or should they be restricted to those ultimate
facts, upon which the rights of parties directly depend? Ev-
idently the latter. Not only does this conclusion follow from
analogy to the rules relating to special verdicts, but it arises
from the very nature of the case. It would clearly be of no
avail to require the jury to find mere matters of evidence, be-
cause, after being found, they would in no way aid the court
in determining what judgment to render. Doubtless, a
probative fact from which the ultimate fact necessarily re-
sults would be material, for there the court could infer such
ultimate fact as a matter of law. But where the probative

fact is merely prima facie evidence of the fact to be proved, the proper deductions to be drawn from the probative fact present a question of fact, and not of law, requiring further action by the jury; and it cannot, therefore, be made the basis of action by the court.     Requiring the jury to find such probative fact is merely requiring them to find the evidence, and not the facts, and results in nothing which can be of the slightest assistance to the parties or the court in arriving at the proper determination of the suit.     The view we take is strongly fortified by the third section of the statute,—that, when a special finding of a fact is inconsistent with the verdict, the former shall control.     This necessarily implies that the fact to be submitted shall be one which, if found, may, in its nature, be controlling.     That can never be the case with a mere evidentiary fact.     A fact which merely tends to prove a fact in issue without actually proving it cannot be said to be, in any legal sense, inconsistent with a general verdict, whatever that verdict may be.     Such inconsistency can only arise where the fact found is an ultimate fact, or one from which the existence or nonexistence of such ultimate fact necessarily follows; and that is never the case with that which is only *prima facie* evidence sought to be proved.     The common law requires that verdicts shall be the declaration of the unanimous judgment of 12 jurors. Upon all matters upon which they are required to find, they must be agreed.     But it has never been held that they must all reach their conclusions in the same way, and in the same method of reasoning.     To require unanimity, not only in their conclusions, but in the mode by which those conclusions are arrived at, would in most cases involve an impossibility.     To require unanimity, therefore, not only in the result, but also in each of the successive steps leading to such results, would be practically distructive of the entire system of jury trials."

V.     The defendant presented 13 special interrogatories with the request that they be submitted to the jury,

4 of which we set out: "(1) At and prior to the time of Morbey's death, was it the habit and custom of clinker pullers by themselves to move engines on the house track?" "(11) If you find for the plaintiff, state upon what negligence you base such finding, and what employee or employes committed it. (12) Was Frank Rahm guilty of any negligence which contributed to the death of Morbey, and, if so, in what respect? (13) Did Rahm do the best he could, under the circumstances, to prevent the collision, after he knew it was McGovern who was running the engine?" There can be no doubt of the propriety of refusing all of the interrogatories save these. With respect to the first, it will be observed that it is limited to movements on the house track. Under the evidence the jury may have found clinker pullers were in the habit of moving engines elsewhere. The eleventh could have been answered, without touching any issue in the case, by saying the deceased lost his life through the negligence of McGovern. The twelfth is open to several objections, only one of which need be mentioned. The jurors might well be expected to experience much difficulty in putting in proper form the answers to such interrogatories. One answer might have been that Rahm failed to throw off the lever as soon as he could; another that he ought to have forcibly removed McGovern when he clung to the lever,—both of which are included in the alleged failure to stop the engine as soon as he ought; another that he should have sounded an alarm in time to have warned Morbey of his danger. Interogatories, as has often been said, should, whenever possible, be so framed as to call for categorical answers. Had defendant desired an expression as to whether Rahm was negligent in failing to stop the engine as soon as he should, in the exercise of ordinary diligence, or in omitting to sound a warning, these questions might have been propounded in such simple and direct form as to exact the answers of either "yes" or "no." We do not think the court erred in refusing the interrogatory in the form requested. The thirteenth interrogatory

was defective in not stating the measure of care required of Rahm. Not the best of which he was capapble, but that which a man of ordinary prudence would have exercised if in his situation is all that was exacted.—AFFIRMED.