MARY JONES, Administratrix of the Estate of M. F.
Jones, Appellant, v. O. P. HERRICK, Appellee.

**Master and servant:** NEGLIGENCE OF MASTER: EVIDENCE. In an action
1 for the death of an employee resulting from injuries received
from the breaking of the hoist chain of a grader, the evidence
is held sufficient to support a finding that defendant was negligent
in using the defective chain.

**Same:** NEGLIGENCE: SAFE PLACE TO WORK: CONTRIBUTORY NEGLIGENCE.
2 An employee assisting in the operation of a grader, when re-
quired to go beneath the machinery to aid in starting the belt
by which it was operated, had the right to assume that it was
so constructed that it was a reasonably safe place in which to
work, in the absence of any knowledge or warning that the
machinery was defective. In the instant case the circumstances
are such that the issue of plaintiff's negligence should have been
submitted to the jury.

**Same:** SCOPE OF EMPLOYMENT: EVIDENCE. Evidence that teamsters en-
3 gaged in hauling dirt from a grader were requested by the person
in charge of the machine to assist in starting the elevator by
going underneath the same is held sufficient to warrant a find-
ing that such was the custom, and that plaintiff in so doing was
not a volunteer but in performance of a duty incident to his
employment.

**Same:** CUSTOM: EVIDENCE. While a custom can not be established
4 by proof of a single act or transaction, still it may be shown
by the testimony of a single witness. In the instant case, how-
ever, the evidence was not of a custom, but of the fact that in
operating a grader it was customary for the employees to assist
in starting the elevator when clogged by going underneath the
same, and was competent for the purpose of showing that plain-
tiff in so doing was acting within the line of his duty.

*Appeal from Franklin District Court.*—HON. R. M.
WRIGHT, Judge.

TUESDAY, NOVEMBER 24, 1908.

REHEARING DENIED TUESDAY, MARCH 16, 1909.

ACTION for damages resulting in a verdict directed for defendant and judgment entered thereon. The plaintiff appeals.—*Reversed.*

*John M. Hemingway,* for appellant.

*J. K. Macomber,* for appellee.

LADD, C. J.—I. The plaintiff is administratrix of the estate of her deceased husband, who, on August 14, 1906, was killed by the falling of an elevator attached to a grader. This machine was moved by ten or twelve horses in front and six or eight horses behind. At the side, at right angles with the grader, was an elevator, or carrier, two or two and one-half feet wide and about nine feet long, hinged to the grader near the bottom, and supported by a chain on each side attached near the outer end. These chains passed back to the grader and in some way were connected with another which was fastened to a wheel, by turning which the end of the elevator was raised or lowered as might seem necessary. The earth was taken from the plow beneath the grader and carried on an apron or belt up the elevator to the end, where it was dropped into a wagon hauled along as the grader moved. Several men and teams were engaged in hauling the dirt so loaded to a dump about thirty rods distant, and among these was deceased. The grader was operated by three men, one of whom drove the teams in front, and another those behind, and the third, Meeker, who rode on the grader, managed the plow which threw up the dirt and the carrier which elevated it to the wagons, and he was in charge of the work generally. The earth frequently clogged the elevator, when it became necessary to clean it out with shov-

1. MASTER AND SERVANT: negligence of master: evidence.

els from above or to assist in starting it by tightening the apron. This was done by seizing the apron from beneath and pulling down when the grader started or was moving. On the occasion in controversy, Foster, who was employed to do anything required, noticed the elevator stop, and, as he went for a shovel, deceased leaped from his wagon, some twenty feet away, and went beneath the carrier as Foster returned to it, when Meeker, who was in charge of the work, called out, "Stand back boys! get away from there! Foster, get away!" or "Stand back, Foster! get away! stand back!" or "Stand back, boys! stand back, Foster!" and, as Foster moved back slightly, deceased pulled down on the apron, the chain broke, and the carrier fell on him, inflicting injuries owing to which he expired in a few minutes. The negligence charged is that an insufficient and defective chain was used to work the carrier. As this chain was but three-eighths of an inch in diameter, and the evidence tended to show it had been broken a short time previous, and that the link broken was half worn through, and also that it was at a place readily observable by Meeker, the jury might have found defendant to have been negligent in the respects charged.

II.    And it can not be said as a matter of law that deceased, if in the line of his duty, was negligent. If required to go beneath the carrier in order to aid in starting the apron, the employees had the right to assume that the machinery was so constructed that the place was a reasonably safe place to work. Of course, if a chunk of earth were toppling from the end of the elevator, any one would know, as a witness testified, that it would be dangerous to go beneath it. So, too, if any one was aware that the chains were insecure. But there is nothing in the record before us indicating that deceased knew of or was put on inquiry concerning any defect in the machinery. The warning of Meeker was at the instant the ele-

2. SAME:
negligence:
safe place
to work:
contributory
negligence.

vator fell and was not necessarily inconsistent with deceased continuing at what he was doing. Pulling down on the apron merely aided the machine when it started, or was going, to move the apron with its load of dirt. The grader was standing, and deceased might well have construed what Meeker said as warning the other men to stand aside, as he was about to start, and especially as he directed Foster, who was about to shovel the dirt out, to get away. In view of the circumstances, we are of opinion that the issue as to whether deceased by his own negligence contributed to his injury was for the jury.

III. But appellee contends that deceased was a mere volunteer and not engaged in the line of his employment. He was an employee, with two teams and wagons was engaged in hauling dirt from the elevator to the dump. The evidence was to the effect that Meeker frequently went beneath the elevator, when clogged, and pulled down on the apron so as to aid in starting it. There was no showing that the teamsters then engaged in hauling did this or were requested to. One Hinton testified that some time previous Meeker had requested him to assist in starting the elevator, but that he had refused because he could not leave his team. One Hanson, who drove one of the teams of deceased for about a month prior to the middle of July previous, though on the same grade about one and one-half miles from where the accident occurred, testified that, when the elevator clogged, the teamsters would go underneath it and pull down on the apron to start it, that Meeker had directed him to do so even when a wagon was not under the end, and that this was of frequent occurrence, though he was not employed to do this work, and that he had heard him call on other men to assist in starting the elevator. There was no showing of what deceased was employed to do, other than as stated. As the grader was being operated by the same person who

3. SAME: scope of employment: evidence.

employed the teamsters, he might have required them to assist in managing the elevator as well as driving the teams. That they did so frequently at the instance of the person in charge of the work, even though some weeks previous to the accident, tended to show that this was the method employed in performing the work, and that in going beneath the elevator and pulling on the apron deceased and other teamsters were acting within the line of their employment. From such evidence the jury might have found that this was the customary method of doing the work, and therefore that deceased in what he did was not a volunteer, but in the performance of a duty exacted from teamsters when the elevator clogged.

IV. Appellee urges that the custom in doing the work can not be proven by a single witness. Of course, a single act or transaction is not enough to warrant the inference that such act or transaction is customary; but we know of no authority declaring the practice or method of performing labor may not be proven by one witness. True, there has been some controversy as to whether a local custom may be shown by a single witness, but the rule seems to have been settled by modern decisions that the testimony of one witness may be sufficient. *Southwest Va. M. & L. Co. v. Chase,* 95 Va. 50 (27 S. E. 826); *Robinson v. U. S.,* 13 Wall. 363 (20 L. Ed. 653); *Vail v. Rice,* 5 N. Y. 155; *Partridge v. Forsyth,* 29 Ala. 200; 3 Wigmore on Evidence, section 2053. But the testimony was not of a local custom, but of the particular method or system adopted by defendant in operating a grading outfit, and for that purpose it was competent (see 1 Wigmore, Evidence, section 379) and in connection with other evidence was sufficient to carry the issue as to whether deceased was engaged in his line of duty to the jury.—*Reversed.*

4. SAME:
   custom:
   evidence.