ROBERT BAYLES, Appellee, v. SAVERY HOTEL COMPANY, Appellant.

**Master and servant:** INJURY TO SERVANT: SCOPE OF EMPLOYMENT: EVIDENCE. In this action for injury to a servant while performing a service at the direction of his superior, the question of whether he was acting outside the scope of his duty and as a mere volunteer was, under the evidence, for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. The plaintiff in this action was directed to perform a duty in an unlighted part of defendant's premises with which he was not familiar, and while doing so fell into an unguarded drain of which he had not been warned and which was not readily discoverable. *Held,* that he was not negligent as a matter of law.

**Same:** VICE PRINCIPAL: INSTRUCTIONS. Authority to hire and discharge men is not of itself a criterion of vice principalship but is a proper circumstance bearing upon that question. But in this action the real controversy was whether plaintiff was acting within the scope of his employment, and if so he was entitled to a safe place to work and to a warning of hidden and unknown danger; so that an instruction on the question of whether his superior was a vice principal, to the effect that plaintiff must prove not only authority of his superior to hire and discharge men but also to direct what plaintiff should do and where and how he should work, was erroneous, only in the sense that it imposed on plaintiff an undue burden; and was not therefore prejudicial to defendant, it being sufficient to show that his superior had authority to direct plaintiff in his work.

**Same.** Where an instruction has the effect simply to put upon plaintiff too great a burden the fact that it is inconsistent in that

respect with another correct instruction on the subject was not prejudicial to defendant.

**Same:** DAMAGES: FUTURE PAIN AND SUFFERING. Where the plaintiff's petition alleged pain, suffering, loss of time and permanent injury, and there was evidence tending to sustain the claim of future suffering, that question was properly submitted to the jury.

**Same:** EXCESSIVE VERDICT. The plaintiff in this action was confined to the hospital for two months suffering much pain as the result of his injury, the physical signs of which at the time of the trial, however, consisted only of an extensive scar on the injured limb. *Held,* that the court's action in permitting a verdict for $2,000 to stand should not be disturbed.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

THURSDAY, JUNE 16, 1910.

ACTION for personal injuries. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Hewitt & Wright* and *Thos. J. Guthrie,* for appellant.

*Thos. A. Cheshire,* for appellee.

EVANS, J.—The injuries complained of occurred on the night of August 21, 1908. The defendant was engaged in operating the Savery Hotel at Des Moines. The plaintiff was an employee, and had been in the service of the defendant for eleven days. He was employed by the chief engineer as a "helper to the engineer and fireman on the night shift." His duties were somewhat indefinite, but consisted principally of wheeling in coal to the boiler room, and wheeling out ashes therefrom. On the night in question he was directed by the night engineer, one Hannan, to go to the elevator water tank, and to see how high the water was therein. This elevator tank was located two hundred or three hundred feet distant from the boiler room. The

plaintiff had never been there before and knew its location only in a general way. His course to it led him through a lighted alley. The tank, however, was located in a so-called alcove to one side of the alley, and this alcove was not lighted. There were several such alcoves opening from the alleyway. The tank in question was so situated that it occupied a part of the first and second alcoves. To that part of it located in the first alcove a ladder was attached which was utilized for the purpose of ascertaining the height of the water therein. The plaintiff, however, entered the second alcove, and, while approaching the tank in that way, stepped into a hole in the basement floor which was full of hot water, whereby his left foot was seriously injured. The hole in question was from thirteen to twenty inches in diameter and between two and three feet deep. It was used as a "sump" to receive the overflow of water from the tank and from the cylinder of the pump, and from it the water thus gathered would percolate through the soil and disappear. The water which came from the cylinder was hot, while that from the tank was cold. There was no barrier erected about the hole, but a plank covering was provided for it. This covering seldom maintained its place because the overflow would lift it and carry it to one side. This was its condition at the time of the accident. At this particular time the hole was full to overflowing. The water extended out over the floor of the alcove to the depth of about an inch. The plaintiff discovered the fact that there was water upon the floor, and walked through it for several feet, but did not know the conditions that caused it, nor that there was any hole in the floor. The negligence charged against the defendant is that it failed to furnish the plaintiff with a safe place to work, and failed to warn him of the existence of such hole and of the danger involved thereby in his approach to the tank.

I. The defendant contends that a verdict should have been directed in its favor on the ground that the plaintiff

was acting outside of the scope of his duties, and that he
was a mere volunteer in the act which he was
about to perform, in that it was no part of
his duty to examine the elevator tank, and
in that it was the personal duty of the night
engineer to do that particular work. Whether this particu-
lar work was within the scope of the duty of the plaintiff
was purely a question of fact upon this record. In the
discussion of this question, appellant has quite ignored some
of the testimony of the plaintiff. The argument is based
upon the assumption that the sole duty of the plaintiff
was to wheel in coal and to wheel out ashes, and that
the place of his duty was in and about the boiler room
only. The plaintiff testified, however, that, when the
chief engineer employed him, he told him that he was
to "help the engineer," and, "if the engineer wanted
anything done, to let the ashes go." It appears also that
during the eleven days of his work the night engineer did
on different occasions direct him to other work than the
mere wheeling of coal and ashes. Upon this state of
evidence, the question of the scope of employment was
clearly a question for the jury.

1. MASTER AND SERVANT: injury to servant: scope of employment: evidence.

II. Appellant also contends that a verdict should have
been directed in its favor because the plaintiff was guilty
of contributory negligence as a matter of law. The plain-
tiff was told by Hannan that the place was
dark and was directed to take matches with
him, which he did. He testified that he was
told to take the matches for the purpose of lighting the
tank and ascertaining the height of the water. He did not
light any of the matches. It is contended that this fact is
fatal to his case. There are several reasons why this
can not be so. It does not appear that a lighting of the
matches would have disclosed the presence of the hole into
which he fell. On the contrary, it appears quite con-
clusively that it would not have done so because the water

2. SAME: contributory negligence: evidence.

had overflowed the hole, and had extended out above it in such a way as to conceal it. The distance from the lighted alley to the tank was very short, and, as we understand the record, the tank itself was in the view of the plaintiff as he approached it. He might well have been required to discover obstructions, if any, in his way, but there were none. To say as a matter of law that he should have discovered a hidden pitfall is quite a different question. We think that the circumstances were such that the question of contributory negligence was for the jury.

III. The court gave to the jury instructions five and six as follows:

(5) If you find from the evidence that the night engineer, Hannan, was given by the defendant authority to hire and discharge men, to direct what work they should do, and where and how they should work, then the acts of said Hannan for and on behalf of the defendant, if proven, would be the acts of the defendant. But if you fail to find that said Hannan was given authority by defendant to hire and discharge men, or to direct them what to do and where and how to work, then the acts of said Hannan would not be binding upon the defendant. In considering this feature of the case, you will take into consideration what general work the plaintiff was required to perform, and what work he had performed previous to the injury, what was said to plaintiff at the time of his employment, if anything, in respect to his work, and all other facts and circumstances as disclosed by the evidence bearing upon this question.

(6) If you find from the evidence that the plaintiff was employed by defendant for certain work in the boiler room, and that the night engineer, Hannan, had no authority to put him at other work or put him at work at other places than said boiler room, then the act of said Hannan in sending plaintiff to the tank in question near which plaintiff was injured would not be the act of the defendant and defendant in that case would not be liable for any injury to plaintiff. But, on the other hand, if you find, as heretofore instructed, that the night engineer,

Hannan, was the agent of the defendant, and had the right and authority to direct the plaintiff where to work, and what to do, then his act in sending plaintiff to the tank in question was the act of the defendant.

Particular complaint is made of instruction five because it made the question of the authority of Hannan to hire and discharge men, the criterion of his alleged vice principalship. It is undoubtedly true that "authority to hire and discharge men" is not of itself a criterion of vice principalship, but it is always a proper circumstance as bearing upon that question. Instruction six fully covered the case at this point as made upon the record, and instruction five might well have been omitted. The real question at this point was whether the plaintiff was acting within the scope of his own duty when he obeyed the order of the night engineer, Hannan. If so, it was enough for the purpose of his case, regardless of the question whether Hannan was a vice principal in the ordinary acceptance of the term. If in obeying Hannan's orders plaintiff was acting within the scope of the terms of his own employment, he was entitled to a safe place to work, and to a warning of hidden dangers which were known to his employer. These were masterial duties, and remained such by whomsoever undertaken and by whomsoever neglected. Instruction five required plaintiff to show that Hannan had authority not only to "hire and discharge men," but also to "direct what work they should do, and where and how they should work." As already indicated, we think it was sufficient for the plaintiff to show that Hannan had authority to direct what work the plaintiff should do and where and how he should work. The instruction, therefore, was erroneous only in the sense that it laid upon plaintiff an undue burden, and it furnished no ground of complaint to the defendant.

Appellant complains of instruction six in that it is inconsistent with instruction five. It is not claimed that

3. SAME: vice principal: instructions.

instruction six is erroneous in any other respect. It is in-

**4. SAME.**

consistent with instruction five, in that it states correctly the rule of law applicable to the case, whereas instruction five laid an undue burden upon the plaintiff as already indicated. Inasmuch as instruction five was not prejudicial, it necessarily follows that the inconsistency between it and a correct instruction is not prejudicial.

IV.   Complaint is made that the court permitted the jury to allow damages for future suffering and future loss of time.   It is said that there was no basis for such an

**5. SAME: damages: future pain and suffering.**

instruction either in the pleadings or in the evidence.   The petition did set forth the injuries of the plaintiff including pain and suffering and loss of time.   It is also alleged that such injuries were permanent.   The medical testimony as to future disability is not definite nor very persuasive.   It does, however, tend to show that there is a probability of future varicose ulcerations on the plaintiff's leg, and that this probability would increase with age, and this was proper matter for the consideration of the jury.   We think it must be said that both the petition and the evidence were sufficient to justify the instruction.   *Evans v. Elwood,* 123 Iowa, 92.

V.   It is urged that the verdict is excessive.   It was for $2,000.   The plaintiff was confined in the hospital for eight weeks, and suffered much pain during his treatment

**6. SAME: excessive verdict.**

there.   The present physical signs of his injuries consist only of an extensive scar on his ankle, and the calf of his leg.   As we read the printed testimony, the verdict impresses us as large.   If the trial court had interfered with it, we could approve such action upon the printed record.   But the trial court thought otherwise, and we do not feel justified in overruling its judgment in that respect.   We are confined here to the printed record, whereas the trial court had an opportunity

to see the apparent state of the injury at the time of the trial by an exhibit of the person.

VI. Plaintiff filed a motion to dismiss the appeal for want of proper exceptions to the judgment and to the order overruling the motion for a new trial. Pending the appeal there was a correction of the record in the court below, and much of the printed matter here has been devoted to that question. The motion to dismiss was ordered to be submitted with the case. We think the motion to dismiss should be overruled. In view of the conclusion reached upon the merits of the appeal, we do not care to enter into a discussion. The judgment below is *affirmed.*