Charles L. Kennis v. The Ogden Coal Co., Appellant.

**Mines and mining**: NEGLIGENCE: EVIDENCE. In this action for injury to plaintiff by the falling of slate from the roof of a mine, while occupying an opening between two parallel entries constructed primarily for the circulation of air, the evidence is held to require submission of defendant's negligence in failing to support the opening.

**Same**: INSTRUCTIONS. Where there was evidence that it was customary for miners to use the "crosscut" or opening between two parallel entries for keeping their tools and eating their lunches, and that there was no rule of the company forbidding such use, refusal of an instruction that if plaintiff was charged with knowledge of company rules excluding miners from using the opening, repeated violations of such rule would not justify plaintiff in assuming the risk involved in its use, was proper. And under the evidence the court rightly instructed that if it was customary for miners to thus use the opening, and this custom was acquiesced in by defendant, it became its duty to keep the walls in a reasonably safe condition and to make reasonably frequent inspection thereof, and that failure of defendant in this respect would render it liable, was properly given.

**Same**: ASSUMPTION OF RISK: INSTRUCTIONS. An employee is bound to exercise the prudence of a reasonably careful person; but where there was no issue as to the capacity and intelligence of the plaintiff, an instruction that an employee assumed the dangers and risks of an employment which an ordinary person of

his capacity and intelligence would have known and appreciated in his situation, could not have been prejudicial to defendant.

**New trial:** MISCONDUCT IN ARGUMENT. The fact that counsel for 4 plaintiff in argument urged the jury to award the most liberal verdict permissible under the prayer of the petition, leaving its possibly excessive character to the court and counsel, and also in suggesting the inference that he had a personal interest in a large verdict and that some party other than the defendant might be liable therefor, such for instance as an insurance company, was not such prejudicial conduct as to require reversal, where the court admonished counsel during his argument to keep within the evidence, which admonition was heeded, and in his instructions expressly cautioned the jury against accepting counsel's interpretation of the evidence and that they had nothing to do with his personal interest in plaintiff's case.

*Appeal from Boone District Court.—*HON. ROBERT M. WRIGHT, *Judge.*

SATURDAY, NOVEMBER 16, 1912.

ACTION to recover damages for personal injuries received by plaintiff while employed in the defendant's mine, alleged to have been due to the negligence of defendant. There was a verdict and judgment for plaintiff and defendant appeals.—*Affirmed.*

*Dyer & Dyer* and *John A. Hull,* for appellant.

*D. G. Baker,* for appellee.

McCLAIN, C. J.—The plaintiff, an experienced coal miner, while eating his dinner in the mine, sitting on a loose tie at the intersection of an entry and a "crosscut," so called, was injured by a fall of slate from the roof. The alleged negligence of the defendant, rendering it liable to plaintiff for damages on account of the injuries received, consisted in the failure to properly investigate the roof of the mine at the place where the plaintiff was injured so as

to discover the dangerous condition of the same and in failing to timber the roof at that place. In addition to a general denial, the defendant pleaded contributory negligence of plaintiff and an assumption by him of the risk incident to the conditions which surrounded him at the time of the alleged injury.

I. The general contention for appellant that, on its motion at the close of the evidence, the court should have

1. MINES AND MINING: negligence: evidence.

directed a verdict for the defendant, and that the verdict as rendered should have been set aside as unsupported by the evidence, is predicated upon various grounds which can be understood only by a brief statement of the uncontroverted facts.

In defendant's mine the coal is taken out in accordance with what is called the "panel" system, involving the extension into the vein of two parallel entries from thirty to forty feet apart connected by a "crosscut" or "breakthrough" intended primarily to cause a circulation of air at the working face of the vein. As the entries are carried forward in the process of mining and rooms are turned off from them, a new "cut-through" is made about every sixty feet, and the one previously constructed is closed up with "gobb" so as to force the air to pass through the last one. Plaintiff was at work mining at the end of entry "G," which was being extended in a westerly direction parallel to entry "H" and about thirty-seven feet beyond the last "crosscut," which is designated as No. 3. But during the forenoon of the day of the accident he had suspended his work about 9 o'clock in order to interview the pit boss in regard to the supply of air, being one of the miners' committee charged in their interest with looking after the relations between the miners and the mine management. Before returning to his work, he and another miner, named Anderson, had seated themselves at the intersection of "crosscut" No. 3 and entry "G" to eat their dinners, and

while so engaged the fall of slate occurred, which injured the plaintiff.

With reference to this state of facts, the general contention of appellant is: That the "crosscut" was constructed and used for the circulation of air only; that it was not the custom in the defendant's mine or in the mining district in which the same was located to timber such "crosscuts;" that plaintiff knew of the custom in this respect and the conditions under which he was working in the mine, and continued in the employment without protest or complaint; that the roof of entry "G" and of "crosscut" No. 3 was in good condition, and, if inspected, would have appeared to be without defect on the morning preceding the accident; and that the fall of slate which caused the injury to plaintiff was in the "crosscut" or "cut-through," and not in the entry, so that, had plaintiff been sitting fully within the limits of the entry, he would not have been injured. In short, the contention is that plaintiff was injured by reason of placing himself fully or partly in the "cut-through" where he had no right to be, and where defendant was under no obligation to protect him from the danger of a falling of slate from the roof, and that plaintiff was charged with knowledge of this fact by reason of his experience, and placed himself in this position of danger for his personal convenience, and not in pursuance of any duty or requirement of his employment.

Without setting out the evidence in detail, it is sufficient to say, in answer to this general contention for the appellant, that there was evidence tending to show that it was the custom of miners, known to defendant, to eat their dinners in the mine at such places as they might select; that the "cut-throughs" were generally used by the miners as proper places in which to put their dinner pails and leave their tools and as proper ways through which to pass from one entry to another if there was any occasion to do so, either in the ordinary prosecution of their work or in cases

of emergency; and that the defendant had assumed, with reference to the entries and "cut-throughs," the duty of maintaining them in a safe condition and preventing the falling of the roof therein by props when necessary. There was also evidence tending to show that the portion of the roof about the intersections of "cut-through" No. 3 with entry "G," which injured plaintiff, was not wholly in the "cut-through," but extended into the entry so that, although plaintiff might have been wholly within the limits of the entry, he would have been injured by the falling of that portion of the roof which was within such limits. If, therefore, the jury was properly instructed, there was no error of which appellant can complain in refusing to direct a verdict for the defendant or in refusing to set aside the verdict as rendered.

II. With reference to the instructions, there are many assignments of error in refusing to give those asked for the appellant and in the giving of those which were submitted by the court to the jury. Many of these can be sufficiently disposed of by reference to the general theory on which the case was submitted.

2. SAME: instructions.

Complaint is made of the refusal of an instruction that, if plaintiff was charged with knowledge of the rules of the company excluding miners from the use of the "crosscuts" by them, repeated violations of such rules would not justify him in the assumption of the risk involved in such use; and the giving of an instruction to the effect that, if it was customary for the miners to use such "crosscuts" for storage of tools and as a place to sit while eating their dinners, or for other convenient uses, and that this custom was acquiesced in by defendant, it was the duty of the defendant to keep the walls and roof of "crosscut" No. 3 in a reasonably safe condition and make reasonably frequent and proper inspection thereof, and that a failure or neglect of defendant in this respect would render it liable. It has already been indicated that there was evidence tend-

ing to show that a custom of miners, acquiesced in by defendant, was to use "crosscuts" for the purposes stated, and that there was no rule of the company brought to their attention forbidding such use. The instruction given properly submitted to the jury the considerations which they should take into account under the evidence in determining whether the use of the "crosscuts" by the miners was proper, and there was no error in refusing to give the instruction asked upon that subject.

In one instruction given the jury was told that an employee assumes the risks and dangers of the employment which he knows and appreciates, and also assumes those

3. SAME: assumption of risk: instructions. which an ordinarily prudent person of his capacity and intelligence would have known and appreciated in his situation. Error is assigned in limiting the assumption of the risks of the employment to those which an ordinarily prudent person "of his capacity and intelligence would have known and appreciated in his situation." If there had been an issue under the pleadings or evidence with reference to the capacity and intelligence of the plaintiff, there might have been some force in this criticism, for, of course, the employee is bound to exercise the prudence of a reasonably careful person; at any rate, he is bound to do so unless the employer is charged with some knowledge of his lack of ordinary capacity and intelligence. But there was no such question in the case. The plaintiff is presumed to have had ordinary capacity and intelligence, and there is not the slightest suggestion in the record to the contrary. The expression criticised, if it could be construed to have had reference to the peculiar capacity and intelligence of the plaintiff, was wholly without prejudice, for the jury could not be presumed to have based their verdict upon any lack of such capacity and intelligence on plaintiff's part. But in the connection in which the expression is used, it clearly had reference to the general capacity and intelligence which

must be presumed to have been possessed by an employee in the general employment in which plaintiff was engaged, and, under this construction of the language, it was not prejudicial as a matter of law. Taking the instruction as a whole, we are satisfied that it contains no erroneous statement of the law as applied to the evidence, and that, if read with the other instructions on the subject, it correctly informed the jury as to the considerations which they should take into account in determining the assumption of risk. The other objections made to the instructions are so evidently without merit, under the facts and circumstances with reference to which they were given, that a discussion of them would be superfluous.

We find nothing in the instructions of which appellant can reasonably complain, and the instructions asked and refused, so far as they suggest the proper rules of law applicable to the case, are fully covered by those given.

III. It is earnestly contended for the appellant that the record presents an aggravated case of misconduct by counsel for the appellee in his opening argument to the jury, and that on account of such misconduct the verdict should have been set aside. In brief, the complaint is that counsel for appellee urged the jury to put the amount of their verdict up to what the jurors should think it ought to be within the prayer of the petition—leaving to him the responsibility of settling afterwards with the court the question whether it was excessive—and in leading the jury to infer that he had some personal interest by way of a contingent fee, and further that there might be some party other than the defendant, such for instance as an insurance company, which might have to pay the judgment rendered. We would hardly be justified in setting out in full the portions of the argument of counsel which are presented in the record in order to show the connection and significance of the particular portions of which complaint is made. The portions

4. NEW TRIAL: misconduct in argument.

of the argument presented in the record would not serve as a model for the use of other counsel in similar cases. But it appears that in the course of the argument, and in response to objections made by counsel for appellant, the court warned counsel for appellee to confine himself in argument to the evidence and the questions properly before the jury for consideration, and that these admonitions were, as given, heeded by counsel to whom they were addressed. In its instructions the court cautioned the jurors against accepting the interpretations which might be put by counsel in their zeal upon the evidence of the witnesses, and expressly told them that they had nothing to do with the interest of the attorney for plaintiff in the case.

After reading with care the argument for plaintiff, so far as it is presented in the record, we are satisfied that, in view of the cautions suggested during the argument and in the instructions, there was nothing so calculated to prejudice or unduly influence the jury as to require the trial court to set aside the verdict. We are reluctant always to interfere with the action of the trial court in its conclusion, based upon the entire trial of the case as it has proceeded before it, that no improper prejudice or influence has affected the verdict as rendered, and in this case we see no occasion for such interference.

The judgment of the trial court is therefore—*Affirmed.*