Ralph H. Looney, Appellant, v. Garfield Coal Company, Appellee.

Mines and mining: DIRECTED VERDICT: REVIEW: EVIDENCE. In reviewing
1 the evidence upon which a directed verdict for defendant was based the appellate court will construe the testimony in the most favorable light for the plaintiff. In this action for injury to an inexperienced miner while assisting two other miners with their work, caused by a fall of slate from the roof of the mine, the evidence presents a question of fact as to whether he was acting within the scope of his employment.

Same: NEGLIGENCE: DUTY TO WARN: SAFE PLACE TO WORK: VICE PRINCI-
2 PAL. It is the duty of a mine operator to warn inexperienced workmen of special hazards or dangers, and to use reasonable care in furnishing employees a safe place to work. And where it was the custom of a mine for the operator to care for the roof of an entry this duty cannot be delegated, and if intrusted to another servant or assumed by him with knowledge of the employer such employee does not act merely as a fellow servant, but as the representative of the employer.

Same: CONTRIBUTORY NEGLIGENCE: ASSUMPTION OF RISK. A miner who
3 did not know of the dangers or hazards incident to his work was neither guilty of contributory negligence nor assumed the risk.

**Same:** SCOPE OF EMPLOYMENT. Where an inexperienced miner was informed by the foreman that other workmen would direct him where to work and what to do, he was not a mere volunteer when shoveling coal which had been mined by others as directed by the workmen, so as to prevent recovery for injuries the result of the employer's negligence; even though he did it with the understanding that the workmen would assist him in return, where it was shown to be the custom for miners to exchange work.

**Same:** CUSTOM: PRESUMPTION. A proven custom among miners to exchange work will be presumed to have been known to the employer, in the absence of evidence to the contrary.

*Appeal from Mahaska District Court.*—HON. K. E. WILCOXSON, Judge.

### FRIDAY, MAY 15, 1914.

ACTION at law to recover damages for injuries received by plaintiff, an employee of defendant, due to a fall of slate in defendant's mine. The defendant denied the negligence charged, and pleaded contributory negligence and assumption of risk. At the close of plaintiff's testimony, defendant filed a motion for a directed verdict, and this motion was sustained. Plaintiff appeals.—*Reversed* and *Remanded.*

*John F. Lacey* and *Crail & Crail,* for appellant.

*C. Woodbridge, Burrell & Devitt* and *Parker, Parrish & Miller,* for appellee.

DEEMER, J.—The negligence charged is that plaintiff, an inexperienced workman, was set to work in defendant's mine without warnings or instructions; that defendant failed to furnish a safe place to work, and was negligent in that it failed to inspect the roof of an entry in the mine, allowed the roof thereof to become dangerous and out of repair, and failed to warn plaintiff thereof; that in consequence a large block of slate fell from the entry upon the plaintiff, causing the injuries

of which he complains. The defenses interposed by defendant have already been noted, and, in addition thereto, it is claimed that the testimony shows plaintiff to have been a mere volunteer at the time he was injured, and the negligence, if any, that of a mere fellow servant, engaged in turning a room off an entry, or in the actual mining of coal at a place where defendant was not required to care for the roof.

As a verdict was directed, and there is some dispute in the testimony, or rather in the inferences to be derived there-

1. MINES AND MIN-
ING: directed
verdict: re-
view: evidence.

from, it is our duty to construe the testimony in its most favorable light for the plaintiff. . It seems that plaintiff had never had any experience as a coal miner prior to the day he was injured, although he had a brother working in the same mine, who was an experienced man. Plaintiff was twenty-six years of age at the time he was injured, was strong, robust, and healthy, and made application to defendant's pit boss for a job on the morning of the day before the accident. The application was granted, and the pit boss said that Dave (plaintiff's brother) and Pete, another experienced miner, would show him (plaintiff) where to work. Plaintiff went down into the mine and watched the miners, but did not go to work himself until the next day. On the afternoon of the day of the first conversation, plaintiff said to the pit boss that he would go to work on the next morning, and the pit boss sold him a set of tools. The only direction given him by the pit boss was that the plaintiff would go to work on entry No. 9, and that "Dave and Pete would show him where on No. 9 to work." At that time Dave and Pete had been at work for some months driving or extending this entry No. 9 to the westward from the shaft, and were then working at the face of the entry, or the end most remote from the shaft. On the day before the accident some coal had been shot down about ninety feet from the place where the fall occurred, and when plaintiff went to work the next morning he began assisting in shoveling the coal, which had been shot down the day before, onto cars to be taken to

the shaft. The coal was down over the tracks in the entry, and the tracks extended to within ten or twelve 'feet of the face of the coal at the end of the entry. Loose coal at the end of the entry had to be shoveled back to get at the face of the entry, and loaded into cars and removed before the entry could be driven any farther. Pete (Johnson) told plaintiff that, if he would come up and help load the coal which had been shot down, he (Pete) would in turn drill a hole for him at the place where plaintiff's room was to be turned off. While there is some dispute in the testimony at this point, a jury would have been justified in finding that at this time no place had been marked off as the place for the room where plaintiff was finally to work, but as a matter of fact plaintiff knew nothing about turning a room, and no one had shown him where to begin on such work. Moreover, there was proof of a custom among miners to exchange work, which custom was known to or was of such a character that a jury might have found actual knowledge on the part of the defendant of the existence thereof. Again, a jury may have found that plaintiff did such work as Dave and Pete instructed him to do; that was, to clean up the coal which had been shot down, and to load it on the cars. This coal had been shoveled back from the face of the entry until it extended five or six feet over the car tracks, which ran to within ten or twelve feet of the face of the entry. As a rule a track is not laid in an entry until it is complete, and the mineowner becomes responsible for the condition of the roof after the entry comes into use by the laying of the tracks.

Plaintiff had also assisted this same morning in shoveling some coal from the track at a point where another room, in which another of plaintiff's brothers was to work, loading it upon a car for removal from the mine. Plaintiff had been at work but a few minutes near the end of the entry assisting Pete, when a large slab of slate fell from the roof. At that time the car was about six feet from the end of the track, and plaintiff was at work on the north side of the car, about four

feet from the end of the track. Dave was at work at the face
of the entry, and Pete was assisting in loading the car. The
slab of slate which fell had been hanging seven or eight days,
and was loose and drummy. It was ten or eleven feet long
and extended out over the tracks; the nearest point being ten
or twelve feet from the face of the entry. It was the custom
at this mine and of mines in that district, for the company
to take care of the entries and to keep them safe up to the face
of the coal, and it was also the custom of the defendant com-
pany to inspect the entries every morning, and to keep them
safe by the removal of dangerous roofs or by timbering them.
There was also testimony from which a jury might have found
that no inspection of this particular roof had been made for
the defendant company for several days, and that, if any such
inspection had been made, it would have resulted in a discovery
of the defects therein. Plaintiff knew nothing of the condition
of the roof or of any dangers to be apprehended therefrom, and
he knew nothing of the characteristics of slate roofs. It does
appear, however, that Pete (Johnson) knew the roof was un-
safe some days before it fell, and that on the same morning an-
other piece of it had fallen down, but nothing had been said to
plaintiff about it, although Johnson knew it was dangerous.
The day before the accident, Johnson pulled down some of
the roof which looked dangerous, and on the morning of the
day of the accident he discovered that part of it still remain-
ing was drummy, and he attempted to wedge it down. He
failed to pry it loose, and thought it would stick; but both he
and Dave knew it was loose and thought it was dangerous,
although each thought it might stay up. Johnson said that
"he got fooled" on this one piece, although part of it had
fallen the same morning. Again, the testimony shows that a
loose or drummy piece of slate will not stand up more than
seven or eight days, and this had been in that condition for
approximately that length of time.

Plaintiff received very severe and serious injuries, and
he sought to recover large damages. The exact theory on

which the verdict was directed is not disclosed by the record.

That it was the duty of the defendant to have warned plaintiff of the special hazards and dangers incident to his employment is clear; and it was equally its duty to furnish him a reasonably safe place to work, or rather to use reasonable care in so doing. According to the usages and practices of the mine, it was the defendant's duty to inspect and care for the roof of the entry, at least as far as the tracks were laid, if not to the face of the coal. This duty, being masterial in character, could not be delegated, and the person to whom such duty was intrusted, or who, as a part of his work, assumed to do it with defendant's knowledge and consent, was not a fellow servant with the plaintiff, who was engaged simply as a miner, having no duty to perform as to the roofs of the mine, save when he went to work in his own room. Until he engaged in such work, he was, according to the testimony, under the direction of his companions Dave and Pete, until he actually started in his work upon his room.

2. SAME: negligence: duty to warn: safe place to work: vice principal.

Plaintiff did not know of the condition of the roof, of its dangers, or the hazards incident to work thereunder, and of course was not guilty of contributory negligence, nor did he assume the risk. These propositions are fundamental and well sustained by authority. *Cushman v. Carbondale Fuel Co.*, 116 Iowa, 618; *Thayer v. Coal Co.*, 121 Iowa, 121; *Carnego v. Coal Co.*, 163 Iowa, 194; *Braddich v. Phillips Coal Co.*, 159 Iowa, 462; *Kennis v. Ogden Coal Co.*, 157 Iowa, 594; *Taylor v. Star Coal Co.*, 110 Iowa, 40; *Wheeler v. Brick Co.*, 162 Iowa, 414; *Mericle v. Acme Co.*, 155 Iowa, 692.

3. SAME: contributory negligence: assumption of risk.

As we understand it, defendants rely upon the proposition that plaintiff was a mere volunteer in what he did, and for that reason there was no responsibility to him, although there may have been want of care on the part of the defendant or some of its employees. The difficulty with this proposition is that there is testimony tending to show that, while plaintiff was employed as a coal

4. SAME: scope of employment.

miner and doubtless to turn rooms and actually mine coal, he was directed by the foreman to look to "Dave and Pete" for instructions as to where to work and what to do. No room had been turned off for him, and when he arrived at the place of his labors he was instructed by one, if not both, of these men, to go to work loading coal which had been broken down from the end of the entry, and which had been shoveled back onto the tracks, into the cars to be taken to the shaft. So far as he knew, this was a part of his duties; or at least a jury would have been warranted in so finding.

True, Pete (Johnson) told him if he would do this he (Johnson) would help him (plaintiff) about his work. But at that time he had no work or no other work than either Dave or Pete directed him to do. In view of this testimony, plaintiff surely should not be regarded as a mere volunteer. He did as he was told, and he was directed to do what Dave and Pete assigned to him. Moreover, there was proof of a custom for miners to exchange work, and this custom, it will be presumed, in the absence of a showing to the contrary, was known to the defendant. *Thayer v. Coal Co.,* 121 Iowa, 121; *Jones v. Herrick,* 141 Iowa, 615; *Kennis v. Ogden Coal Co.,* 157 Iowa, 594; *Grannis v. R. R.,* 81 Iowa, 444; *King v. Mendota Coal Co.,* 163 Iowa, 181. Some of these cases last cited are much weaker in their facts than appear in this record; and, aside from the testimony of custom, we think there was enough to take the case to the jury on the question of plaintiff's being within the scope of his employment at the time he was injured. *Bayles v. Savery Hotel Co.,* 148 Iowa, 29; *Jones v. Herrick,* 141 Iowa, 615.

5. SAME: custom: presumption.

The case differs essentially from *Wright v. Rawson,* 52 Iowa, 329, and other like authorities, relied upon by defendant. We think it was for a jury, under proper instructions from the court as to the law applicable to the facts found.

The judgment must therefore be, and it is, reversed, and the cause remanded for a new trial.—*Reversed* and *Remanded.*

LADD, C. J. and GAYNOR and WITHROW, JJ., concurring.