# IN THE COURT OF APPEALS OF IOWA

No. 14-0758
Filed January 28, 2015

**GLENDA and STEVE LAMBERT, Individually
and As Next Friends of JESSICA L. LAMBERT,**
    Plaintiffs-Appellants,

**vs.**

**GEICO INDEMNITY COMPANY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The Lamberts appeal from the district court's ruling granting summary judgment in favor of the Lamberts' underinsured motorist carrier, GEICO, finding GEICO established as a matter of law it had canceled the Lamberts' insurance policy prior to the date of their automobile collision. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Jeffrey S. Carter of Jeff Carter Law Offices, P.C., Des Moines, and Ryan J. Ellis of Ellis Law Offices, P.C., Indianola, for appellants.

Barbara A. Hering and Rebecca E. Reif of Hopkins & Huebner, P.C., Des Moines, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Following an automobile collision, Glenda and Steve Lambert, individually and as next friends of their daughter Jessica Lambert (collectively the Lamberts), filed suit seeking recovery of damages from the other driver and their underinsured motorist carrier, GEICO Indemnity Co. After the Lamberts' suit against the other driver was settled and dismissed, GEICO filed a motion for summary judgment, asserting that, as a matter of law, the Lamberts had no coverage at the time of the collision because it had canceled their policy prior thereto for nonpayment of the premium. The district court agreed, and it granted GEICO's motion and dismissed the Lamberts' petition.

The Lamberts appeal the district court's ruling, arguing the court erred in determining the following two issues were not questions for a jury: (1) whether GEICO had provided adequate notice to the Lamberts to retroactively terminate the policy subsequent to the date of the collision, and (2) whether GEICO was estopped from claiming the policy was canceled because of its past custom and course of performance concerning the Lamberts' nonpayment of premiums. Upon our review, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### I. Scope and Standards of Review.

We review both the interpretation of insurance contracts and the grant of summary judgment for correction of errors at law. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500-01 (Iowa 2013). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Thomas v. Gavin*, 838 N.W.2d 518, 521 (Iowa 2013) (quoting Iowa R. Civ. P. 1.981(3)). "An issue is 'material' only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law." *Sallee v. Stewart*, 827 N.W.2d 128, 132-33 (Iowa 2013). We must: "(1) view the facts in the light most favorable to the nonmoving party, and (2) consider on behalf of the nonmoving party every legitimate inference reasonably deduced from the record." *Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 774 (Iowa 2013).

## II. Background Facts and Proceedings.

Viewing the evidence in the light most favorable to the Lamberts, we find the following facts. In June 2010, the Lamberts purchased from GEICO an insurance policy covering their vehicles, to be in effect to December 12, 2010. At the end of the six months, the policy was to automatically renew. The Lamberts made an initial payment, and the remaining balance of the premium was broken into six monthly payments. The Lamberts arranged that the monthly payments would be automatically withdrawn from their bank account; however, despite the arrangement, the Lamberts were chronically late in their monthly premium payments because there were insufficient funds in the bank account when the payments became due.

On July 12, 2010, GEICO attempted to withdraw the Lamberts' first monthly payment, but the request was declined by the Lamberts' bank. Four days later, GEICO again attempted to withdraw the Lamberts' monthly payment, and the payment was successfully withdrawn.

On August 12, GEICO attempted to withdraw the Lamberts' monthly payment, but the request was declined by the Lamberts' bank. Four days later, GEICO again attempted to withdraw the Lamberts' monthly payment, and the payment was declined once again. On August 18, GEICO sent the Lamberts a cancellation notice stating their policy would be canceled on August 29 unless the amount of the monthly premium was remitted by the cancellation date. The Lamberts subsequently mailed a paper check to GEICO. When the check was scanned in at its remittance center on September 1, the cancellation notice was "automatically rescinded" by GEICO.

On September 12, GEICO attempted to withdraw the Lamberts' monthly payment, but the request was declined by the Lamberts' bank. GEICO resubmitted its request for payment four days later, but its request was once again declined by the bank. On September 20, GEICO mailed a cancellation notice to the Lamberts informing them that their policy would be canceled on October 1 unless they made the payment by that date. The Lamberts then made the payment by credit card on September 30. The cancellation notice was automatically rescinded.

October's automatic payment withdrawal was declined by the Lamberts' bank on October 12. GEICO resubmitted its request for payment four days later, but it was once again declined. On October 18, GEICO sent a cancellation notice to the Lamberts informing them that if a payment was not made by October 29, the policy would be canceled on that date. On October 28, the Lamberts made the payment by credit card, and the cancellation notice was automatically rescinded.

November's automatic payment withdrawal was declined by the Lamberts' bank on November 12. GEICO's request for payment was resubmitted four days later and declined again by the bank for insufficient funds. Meanwhile, GEICO on November 8 mailed to the Lamberts the policy renewal with an effective date of December 12. GEICO made no further billings in November nor did it send the Lamberts a cancellation notice for nonpayment that month.

The automatic withdrawal of December's payment, which apparently included the past-due amount for November, was declined by the Lamberts' bank. GEICO resubmitted its request for payment four days later, and the payment was declined again for insufficient funds. On December 20, 2010, GEICO sent a cancellation notice to the Lamberts stating their policy would be canceled on December 31, 2010 due to nonpayment unless they submitted a payment of the past-due amount prior to the cancellation date. The cancellation notice stated that all payments were "subject to normal collection" and a partial payment would "not void this cancellation notice." The Lamberts understood that the notice meant their policy would be canceled by a certain date unless the premium was paid. The Lamberts misplaced the notice and failed to make a payment by the December 31, 2010 cancellation date.

On January 2, 2011, Glenda Lambert contacted GEICO by telephone to see if it was still possible to make the past-due payment. She was told, "since it was in the [forty-eight] hours that if [she] did an ['eCheck'] it would be okay." She understood an eCheck was a check by phone. She provided GEICO with her bank's routing number, her checking account number, and the name appearing on her check. The GEICO representative additionally told Glenda that she "was

within the [forty-eight] hours and the premium was made, that the insurance was fine." At that time, her bank account had a negative balance.[1] The Lamberts did not look at their checking account balance prior to making the payment, believing there were adequate funds in the account to cover the payment. The same day, GEICO automatically rescinded its cancellation notice.

On January 5, the Lamberts' bank account records indicate a "Check Reversal" with regard to the eCheck. The Lamberts "most likely" received an email from the bank advising them the eCheck was not honored because of insufficient funds in their account. However, they believed GEICO would automatically resubmit the eCheck a second time, though they admitted it would not have cleared their account the second time either.

On January 8, the Lamberts' vehicle was struck by another vehicle. The Lamberts notified GEICO of the collision the same day.

The Lamberts' bank records indicate another "Check Reversal" on January 11. On January 14, GEICO's records indicate the eCheck was returned for insufficient funds. After receiving an email from their bank informing them that the eCheck had not been honored, the Lamberts contacted GEICO on January 14 and made the delinquent payment by credit card. A penalty charge was also assessed by GEICO.

On January 17, GEICO's records indicate "[Out of Sequence] Cancel All" with an effective date of December 31, 2010. On January 18, 2011, GEICO sent a letter to the Lamberts informing them that their financial institution had "not

---

[1] The Lamberts' bank statements for the relevant account show their account was overdrawn from December 21, 2010 until January 19, 2011.

honored the payment that [they] recently submitted on the policy." No doubt this was in reference to the bounced eCheck. The letter further stated: "Since this payment was not honored, the original cancellation notice of December 20, 2010 has been reinstated." The letter went on to state:

Therefore, we must notify you as follows:

THE ABOVE CAPTIONED POLICY WAS CANCELED AT 12:01 A.M. ON December 31, 2010.

GEICO refunded the unearned premium to the Lamberts on January 19. On January 22, the Lamberts made another premium payment by credit card. GEICO's records show it reissued the policy the same day, with an effective date of January 23.

The Lamberts filed suit against GEICO in 2012, seeking recovery under their policy's underinsured motorist coverage. GEICO maintained that the Lamberts' policy had been canceled on December 31, 2010 for nonpayment, and therefore, the Lamberts had no coverage at the time of the collision. GEICO moved for summary judgment on this basis.

The district court succinctly set forth the parties' arguments as follows:

[GEICO's] position on this motion is relatively straightforward: there is no coverage for the January 8 accident, as the policy was canceled effective December 31, 2010 for lack of a collectible payment prior to the loss, and it properly reinstated coverage effective January 22. [The Lamberts] argue[] that the cancellation was ineffective for lack of a second notice after the first notice was rescinded and that [GEICO] is estopped from claiming the policy was canceled as a result of the prior practice of accepting late payments.

The court rejected the Lamberts' argument regarding the need for a second cancellation notice, stating:

The [Lamberts'] argument regarding the need for a second cancellation notice is premised on two theories: (1) they were advised that coverage would remain in place as a result of the January 2 and January 8 conversations with [GEICO], and (2) [GEICO's] rescission of the cancellation notice reinstated coverage and necessitated a new cancellation notice once the January 2 eCheck was returned. There is no basis in fact for the first contention. Giving the [Lamberts] every inference in their favor, all that can be said from the conversation on January 2 is that they were advised that the eCheck would be accepted to maintain coverage, if there were adequate funds in the account to allow it to clear. The January 2 conversation did not contradict or invalidate the requirement contained in the cancellation notice that any payments tendered to avoid cancellation were "subject to normal collection," and there was no reasonable basis for the [Lamberts']-claimed assumption that sufficient funds were in the account. This unsubstantiated assumption does not generate an issue of material fact regarding the reinstatement of coverage as of January 2. Likewise, there is nothing in the present record to suggest that coverage was ever even addressed in the January 8 conversation. It is of no help to the [Lamberts] in establishing the need for a second cancellation notice.

A similar analysis disposes of the [Lamberts'] second argument regarding [GEICO's] internal rescission of its cancellation notice. First, there is no indication that this event was ever communicated to the [Lamberts] prior to any material date in the chronology; the only reference to it is contained within [GEICO's] records. It was noted in response to an attempt to make a payment shortly after the effective date of cancellation. That payment still needed to be collectible for it to maintain coverage; it is undisputed that it was not collectible, and there is no reasonable basis for this court to conclude that the [Lamberts] believed it would clear. Absent some indication that [GEICO] communicated to the [Lamberts] that the cancellation notice was no longer considered valid, it could rely upon that notice in the event the January 2 eCheck was not collectible to cancel coverage effective December 31, 2010. The manner in which [GEICO] internally referred to the cancellation notice upon receipt of a tentative premium payment violates neither Iowa Code chapter 515D (2011)[2] nor the terms of

---

[2] Iowa Code chapter 515D is known as the "Iowa Automobile Insurance Cancellation Control Act." Iowa Code § 515D.1. The chapter applies to automobile insurance policies "providing bodily injury liability, property damage liability, medical payments, uninsured motorist coverage, physical damage coverage, or any combination thereof." *Id.* § 515D.2(1). Curiously, the section does not make reference to underinsured motorist coverage. Nevertheless, we believe this to be the operative chapter to the issues in this appeal. Section 515D.5 requires notice of cancellation for

the policy in question. There was no need for a second cancellation notice after the December 20 notice prior to [GEICO's] cancellation of coverage.

The district court found GEICO established as a matter of law the Lamberts' GEICO policy was not in effect at the time of collision and dismissed the Lamberts' petition.

The Lamberts now appeal.[3]

### III. Discussion.

### A. Policy Rescission.

Central to this appeal from summary judgment is whether or not a fact question was generated as to whether or not the policy cancellation was rescinded before the collision. Or, to put it another way, whether or not the policy was reinstated prior to the collision. The Lamberts assert "[t]he policy was clearly in effect at the time of the collision." GEICO counters that because it "adhered to the cancellation procedures required by statute and the policy to cancel the policy effective December 31, 2010 for the nonpayment of premium, the policy was not in effect on the date of the accident and the Lamberts cannot recover against GEICO on that policy." The district court explicitly found there was not an issue of material fact generated regarding the reinstatement of coverage as of January 2, 2011. The court also found there was no genuine issue of material fact generated concerning the effect of the December 20, 2010 cancellation

nonpayment of premium be mailed or delivered to the insured at least ten days prior to the date of cancellation.

[3] At the risk of sounding like a broken record, we once again note an all too frequently observed violation of the rules of appellate procedure: failure to place a witness's name at the top of *each* appendix page where that witness's testimony appears. *See* Iowa R. App. P. 6.905(7)(c) (emphasis added). Furthermore, the omission of transcript pages was not indicated by a set of three asterisks at the location on the appendix page where pages were omitted. *See* Iowa R. App. P. 6.905(7)(e).

notice. The court concluded: "[The Lamberts] failed to generate a genuine issue of fact that would allow [them] to argue to a jury that [GEICO] is precluded from canceling the coverage in question effective December 31, 2010." In other words, the court concluded the policy was canceled effective December 31, 2010, and the Lamberts failed to generate an issue of material fact as to whether the policy was reinstated before the collision. We believe the district court erred in so concluding.

On one hand, when Glenda Lambert contacted GEICO by telephone on January 2, 2011 to see if it was still possible to make the past-due payment, she was told "since it was in the [forty-eight] hours that if [she] did an eCheck it would be okay." She provided GEICO with information necessary to make the payment by eCheck. The GEICO representative additionally told Glenda that she "was within the [forty-eight] hours and the premium was made, that the insurance was fine." The same day, GEICO's records show "Cancellation Notice Automatically Rescinded." The GEICO representative testified at her deposition that if the Lamberts had gone online to check the status of their GEICO account as of January 3, 2011, it would have shown as "active," which meant their policy was "in effect." Furthermore, she testified that had the Lamberts checked the status of their account on January 8, 2011, the date of the collision, or even on January 13, 2011, the website would have shown their account as "active." After the eCheck bounced the second time on January 14, 2011, GEICO accepted a credit card payment from the Lamberts for the past-due premium. GEICO also assessed a penalty charge at that time. Ten days after the collision, and four days after accepting a credit card payment for the delinquent premium, GEICO

stated in its January 18, 2011 letter to the Lamberts "the original cancellation notice of December 20, 2010 has been reinstated." To reinstate is "[t]o place again in a former state or position; to restore." Black's Law Dictionary 1399 (9th ed. 2009). From GEICO's statement that the cancellation notice had been reinstated, a reasonable person could conclude the cancellation notice had been rescinded at some point, for had it not been rescinded, there would be no cause to "reinstate" the cancellation.

On the other hand, the Lamberts were provided a clear and unequivocal notice of cancellation in December 2010. It stated the date and time of cancellation and explained that cancellation would take place at that time if payment was not received by then. It is undisputed the Lamberts received the notice. It is undisputed the Lamberts understood the notice. The December notice strictly complied with the requirements set forth in chapter 515D. Nonetheless, the Lamberts made no payment to GEICO prior to the effective date of cancellation.

Additionally, a reasonable person could find the January 2, 2011 eCheck was not a "payment." The December 20, 2010 cancellation notice to the Lamberts specifically stated that "[a]ll payments [were] subject to normal collection." While the phrase is not defined in the notice or in the policy, it commonly means that a credit to a customer for a payment before collection is merely provisional and may be canceled if the payment is not paid by the bank. *See Jensen v. First Nat'l. Bank*, 213 N.W. 854, 855 (S.D. 1927). Furthermore, a "payment" is the "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."

Black's Law Dictionary 1243. It is undisputed the Lamberts did not have sufficient funds in the bank to cover the eCheck on January 2, 2011, nor were there sufficient funds in the account when GEICO ran it through a second time. A reasonable person could find the eCheck did not fulfill the Lamberts' promise to pay the delinquent premium payment.

With these highlighted facts in mind, we conclude the record establishes a genuine issue of material fact as to whether or not the policy cancellation was rescinded prior to the collision. Therefore, whether the policy was in effect at the time of the collision was a jury question. We reverse the district court on this issue.

### B. *Notice of Cancellation for Nonpayment.*

If a jury finds the policy was reinstated prior to the collision, the question remains as to whether the January 18, 2011 notice could retroactively cancel the policy effective December 31, 2010. The Lamberts contend GEICO could not retroactively cancel the policy. The Lamberts direct us to Iowa Code section 515.125(1),[4] which states in relevant part:

> Unless otherwise provided . . . , a policy or contract of insurance provided for in this chapter shall not be . . . canceled except by notice to the insured as provided in this chapter. A notice of cancellation is not effective unless mailed or delivered by the insurer to the named insured at least thirty days before the effective date of cancellation or, where cancellation is for nonpayment of a premium, assessment, or installment provided for in the policy, . . . *at least ten days prior to the date of cancellation.*

---

[4] Iowa Code chapter 515 applies to insurance companies, other than life, with certain exceptions. The language of section 515.125(1) with regard to notice of cancellation for nonpayment of premium essentially mirrors the language of section 515D.5(1), as both require ten-days' advance notice of cancellation. As stated earlier, we believe section 515D.5(1) is the applicable statutory provision to the issue on appeal.

(Emphasis added.) The Lamberts' policy contained similar language stating it could "cancel this policy by mailing to [the insured] . . . written notice stating when the cancellation *will be effective*." (Emphasis added.) The policy further provided GEICO would mail this notice to the insured ten days "in advance if the proposed cancellation is for non-payment of premium or any of its installments when due." The "right to notice of cancellation is a valuable right of the insured. Its purpose is to forewarn the insured so he may seek insurance elsewhere." *Farmers Ins. Grp. v. Merryweather*, 214 N.W.2d 184, 191 (Iowa 1974) (internal citations omitted).

Reinstatement of a policy necessarily restores or reestablishes the policy to its previous state or status. In such a situation, we believe the requirements of chapter 515D, as well as the contractual provisions concerning notice of cancellation, are applicable. If the policy is found to have been reinstated prior to the collision, GEICO's January 18, 2011 letter, purporting to retroactively reinstate the cancellation effective December 31, 2010, is ineffective for it does not comply with section 515D.5(1) or the policy's contractual provisions that require at least ten days' notice *prior* to cancellation.

### C. Estoppel.

Alternatively, the Lamberts assert GEICO was estopped from canceling their policy as a result of the "custom or course of performance" that had developed regarding the Lamberts' payment of their premiums. They contend because GEICO had allowed the Lamberts to make late payments and then reinstated their policy in the past, GEICO was prohibited from "arbitrarily" enforcing cancellation to its benefit and to the Lamberts' detriment. The district

court's spot-on ruling on this issue is well-analyzed, well-reasoned, well-written, and well worth repeating here:

> Looking at that history in a light most favorable to the [Lamberts], the court concludes that a custom of any sort that would benefit the [Lamberts] has not been established. While it is clear that the [Lamberts] were chronically late in their premium payments once the policy was initially issued, of the five months in question (July through November), only one month (August) involved a tendered payment after the effective date of cancellation; in July and November, no notice was given, and in September and October, collectible payments were received prior to the cancellation date.
>
> Unlike *Laverty* [*v. Hawkeye Security Insurance Co.*, 140 N.W.2d 83, 84-85 (Iowa 1966)], in which the history of acceptance of late payments stretched over several years, in this case the only event which is even arguably analogous to the situation posed after the December 20 cancellation notice was the singular occasion in July of 2010 when payment was received two days after the effective date of cancellation; in the other months, there either was no cancellation notice issued or payment was received before the cancellation date. A single instance of accepting a late payment cannot constitute a "custom" or "course of dealing" of such behavior. *See, e.g.*, *Unigard Mut. Ins. Co. v. Fox*, 236 S.E.2d 851, 853 (Ga. Ct. App. 1977) (holding a single prior late payment insufficient as a matter of law to show course of dealing); *Cont'l Ins. Co. of New York v. Stratton*, 215 S.W. 416, 417 (Ky. Ct. App. 1919) ("We are of opinion that a single prior instance of accommodation and indulgence granted by the company to Stratton on the payment of a premium is not sufficient to establish a custom of accepting installments after they are due"); *Holloman v. Jefferson Standard Life Ins. Co.*, 188 So. 500, 503 (La. Ct. App. 1939). This is consistent with Iowa law on the subject. *See Jones v. Herrick*, 118 N.W. 444, 446 (Iowa 1908) ("Of course, a single act or transaction is not enough to warrant the inference that such act or transaction is customary."). The [Lamberts] have failed to establish a genuine issue of material fact on the issue of the claimed custom of [GEICO] of accepting premium payments past the effective date of cancellation.

We agree and affirm the district court on this issue.

*IV.  Conclusion.*

For the foregoing reasons, we affirm in part and reverse in part the district court's grant of summary judgment in favor of GEICO.  We remand for reinstatement of the Lamberts' petition and for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**